C. O. WHITTEMORE, APPELLANT, *v.* THOMAS H. COPE, AND OTHERS, RESPONDENTS, AND GEORGE H. COPE, APPELLANT.

(See *Ayres* v. *Jack,* 7 Utah, 249; *Cope's Estate,* Id, 63; *Cope* v. *Cope,* 137 U. S. 687; 34 L. Ed. 832.)

1. PAROL PARTITION OF LAND.—POSSESSION.—STATUTE OF FRAUDS. —A parol partition of lands between co-heirs carried out and followed by actual possession in severalty of the several parcels will be enforced, notwithstanding the statute of frauds, on the ground of part performance when the partition is equitable and the parties acted understandingly.

2. ID.—MINOR HEIRS.—RATIFICATION.—Where, at the time of the parol partition of their father's land, two of the sons were minors, if after attaining their majority and knowing the circumstances of the partition, they retained possession of, exercised exclusive dominion over and sold the parts allotted to them, and asserted no claim to the land allotted to the other heirs, they cannot repudiate or disaffirm the partition.

3. ID.—EVIDENCE.—A person selected to make a parol partition of lands may thereafter testify as to the fact of partition.

4. ID.—STARE DECISIS.—Where a parol partition between co-heirs has been sustained in a previous case, though the parties are different, the appellate court will adhere to its previous decision, there being nothing manifestly erroneous therein.

5. ID.—LIFE ESTATE.—HOMESTEAD.—ADVERSE POSSESSION.—SEMBLE.—Where a surviving wife has a life estate in her husband's homestead, the character of her possession may be changed by parol partition to which she and the heirs of the husband agree, so as to make her possession adverse. *Semble,* that an occupant, with a mere naked possession, upon the public lands, the title of which is in the general government, has no estate which he can devise or pass title, and no interest upon which a homestead title can be predicated.

(No. 530. Decided April 27, 1895. 40 P. R. 256.)

APPEAL from the District Court of the Third Judicial District. Hon. S. A. Merritt, *Judge.*

Action by C. O. Whittemore against Thomas H. Cope and others, for the recovery of a share of the estate of Thomas H. Cope, deceased. From a decree based on the referee's report in harmony with the cross-complaint of defendants, plaintiff and defendant, George H. Cope, appeal. *Affirmed.*

Mr. *C. O. Whittemore,* in *pro. per.*

Mr. *S. P. Armstrong,* for appellant, George H. Cope.

Janet Cope, the legal wife of Thomas Cope, lived upon and occupied the homestead and had a life estate therein. Her estate in the land could not be adverse to the rights of Thomas and George Cope. Comp. Laws, 1876, § 676, p. 268; *Dooly* v. *Stringham,* 4 Utah, 108; *Rands* v. *Brain,* 5 Id. 197. Her possession was subordinate to and in harmony with the estate in remainder, and could not be hostile to it during her life. *Ziller's Lessee* v. *Eckert,* 4 How. 295; *Christie* v. *Gage,* 71 N. Y. 192–3; *Pinckney* v. *Burrage,* 31 N. J. L. 21; *Poor* v. *Larrabee,* 58 Me. 556; *Simmons* v. *McKay,* 5 Bush. 31; *Jones* v. *Freed,* 42 Ark. 361; *Carpenter* v. *Denoon,* 29 Ohio St. 379; 1 Am. & Eng. Enc. of Law, p 237; *Edson* v. *Munsell,* 12 Allen, 602; *Jackson* v. *Schoonmaker,* 4 Johns. 402; *Clute* v. *N. Y. C. & N. Ry. Co.,* 120 N. Y. 273.

Janet's position as life tenant is presumed to continue until there is an actual disseizin; until by her outward acts, unequivocal, overt and notorious, that showed that she intended to hold the lot adversely to her co-tenants. Tyler on Eject. p. 875, *et seq.;* Sedge, & Waite, Trial of Title, §§ 730–735–749; *Ball* v. *Palmer,* 81 Ill. 372; *Kirk* v. *Smith,* 9 Wheat. 288; *Holdridge* v. *Gillespie,* 2 Johns. Ch.

33. It is very doubtful whether a life tenant in possession can acquire title adverse to the remainder-man. Am. & Eng. Enc. of Law, vol. I, p. 237, vol. VI, p. 881; Tyler on Eject, 926; *Keith* v. *Keith*, 80 Mo. 127; *Mushan* v. *Mushan*, 87 Ill. 83; *Sutton* v. *Casseleggi*, 77 Mo. 405; *Varney* v. *Stephens*, 22 Me. 334. The petition of Janet and Thomas in the probate court for distribution of the estate to them, their acceptance of a deed from the administrator in accordance with the decree, and their conveyance of the land afterward amounted to an acknowledgment that Janet was holding as heir and not otherwise. Tyler on Ejectment and Adv. Pos. 719–721; Sedge & Waite, Trial of Title, § 744; *Keith* v. *Keith*, 80 Mo. 128.

There is nothing in the record to show that under the pretended parol partition, Thomas ever took possession of lot 5 or in any way gave notice to George that he intended to hold it exclusively. Before one co-tenant can get an adverse title, there must be an actual ouster. *Clymes' Lessee* v. *Dawkins*, 3 How. 689–90; *Thompson* v. *Pioche*. 44 Cal. 517; *McClaskey* v. *Barr*, 47 Fed. R. 159; *Ball* v. *Palmer*, 81 Ill. 372; *Bush* v. *Huston*, 75 Ill. 347; *Armstrong* v. *Morrill*, 14 Wall. 145; *McClung* v. *Ross*, 5 Wheat. 124; *Bracken* v. *Jones*, 63 Tex. 186; Tyler on Eject., etc., p. 925. Mere belief by Thomas that he was entitled to the whole of the lot by virtue of the devise from Janet, does not show an intent to oust. *Grube* v. *Wells*, 34 Iowa, 150; *Skinner* v. *Crawford*, 54 Iowa, 122. If he had formed the intent to oust George, that intent must have been brought to the knowledge of George before the adverse possession would begin to run. Freeman on Coten. & Par. §§ 299, 230; *Faulk* v. *Bond*, 41 N. J. L. 538–545; *Ard* v. *De LeGuerra*, 18 Cal. 75; *Budd* v. *Collins*, 69 Mo. 137–9.

We will next consider the claim of respondent that he has title to lot 5, by virtue of the parol partition alleged

to have been made in 1867, and subsequently ratified by the parties. The evidence relative to the parol partition was inadmissible. *First.* The pretended partition bound nobody and had no effect, it was supposed to have been made in 1867, when George Cope was only 3 years old and Thomas was about 14 years old. They were not competent and did not contract. What was done was at the request of Janet and Margaret Cope. *Second.* At the time of the supposed partition, the land belonged to the United States; it was unsurveyed, and the Land Laws of the United States had not been extended over the territory. None of the parties had any estate in the land. *Buxton* v. *Traver,* 130 U. S. 232. *Third.* A claim in accordance with that pretended partition was made under the townsite act and was rejected. That rejection had the force of a judgment. *Tecumseh Townsite Case,* 3 Neb. 267; *Cofield* v. *McClelland,* 16 Wall. 335; *Stringfellow* v. *Cain,* 99 U. S. 610; Herman on Estop. §§ 45, 48, 50, 51, 74, 110, 111; *Drake* v. *Reggel,* 10 Utah, 376. *Fourth.* The pretended parol partition of the land was void as within the statute of frauds, "that no estate or interest in lands * * * shall hereafter be created, granted, * * * unless by act or operation of law or by deed of conveyance in writing subscribed by the party * * *." 2 Comp. Laws, 1888, § 2831.

Under such statute it is held that a verbal partition is ineffectual to convey lands. 1 Wash. R. P. p. 710-719; Brown on Stat. Frauds, § 71, and cases cited. And in no case will a parol agreement be sustained where it would be unjust or inequitable. Story's Equity, § 750; *Agard* v. *Valentia,* 39 Cal. 302. In the first place, according to the rule laid down by such courts, evidence of parol agreement is only admissible where the parties understandingly entered into the parol partition. Freeman on Coten. & Par. § 397. And where they had a right to contract.

Id. § 402. The evidence of the parol partition must be certain, definite and unequivocal, as to all its terms, dates, and conditions. *Patterson* v. *Martin,* 33 W. Va. 500; *Detrick* v. *Sharrer,* 95 Pa. St. 523–25; Brown on Stat. Frauds, § 493; Story's Eq. § 764. Proceedings in the probate and district courts and the conveyance of the land by the mayor to the administrator shows that the co-heirs did not consent and did not consider that any partition of the land had ever been made. Three requisites, which would enable a court to enforce a parol partition, are lacking in this case. *First.* The parties did not enter understandingly into any parol partition. *Second.* The evidence is indefinite and uncertain as to its terms and date. *Third.* It was not followed by notorious or exclusive possession or such possession as was not referable to another and independent right.

Janet and Thomas made claim in the administration of the whole estate for the whole of the property as the sole heirs of Thomas Cope, deceased. That claim estops Thomas from now claiming under any other right. Bigelow on Estop. (5th ed.) 673, 683, 717. Their application for distribution to them as heirs admitted that the property could pass by descent, and is inconsistent with their claim that they already owned it by an independent title. Bigelow on Estop. 674; *Smith* v. *Smith,* 14 Gray, 532; *Noe* v. *Splivola,* 54 Cal. 210; *Etchborne* v. *Auzerais,* 45 Cal. 122. Thomas and Janet filed a petition for distribution of the estate on Sept. 16th, 1885; on March 1st, 1885, they filed a written objection to any of the estate being distributed to George. On March 2d, 1889, they accepted a deed from the administrator purporting to convey to them lots 5 and 2 and the five-acre lot in pursuance of the decree. They continued in the district and supreme courts of this territory and in the supreme court of the United States to oppose George's right to any of the property. If there

ever was a parol partition, it was repudiated by the very party who now seeks to enforce it. It was not until the supreme court of the United States decided that George could inherit did these parties make any pretended claim by a parol partition.

*Messrs. Bennett, Marshall & Bradley, Messrs. Williams, Van Cott & Sutherland,* for respondent Thomas H. Cope.

*First.* The oral partition in this case is valid and binding, as possession has been taken thereunder and acquiesced in for a long time. Freeman on Coten. & Par. § 402; *Ebert* v. *Wood,* 2 A. D. 436 (1 Binney, 216); *Welchel* v. *Thompson,* 99 A. D. 470 (39 Ga. 559); *Tomlin* v. *Hilyard,* 43 Ill. 300; *McMahon* v. *McMahon,* 53 A. D. 481 (13 Pa. St. 376); 17 Am. & Eng. Enc. of Law, pp. 668–9, and note 1, p. 669; *Ayers* v. *Jack,* 7 Utah, 249.

*Second.* The oral partition is good in this case, though at the time made some of the parties were minors. Freeman on Coten. & Par. § 414; *Lynch* v. *Baxter,* 51 A. D. 735 (4 Tex. 431); *Wood* v. *Fleet,* 93 A. D. 536–7 (36 N. Y. 499); *Ayers* v. *Jack, supra.*

*Third.* Outside of any evidence in regard to the oral partition or in regard to its validity, it is well settled that a partition is effected and absolutely binding in case a portion of the land is conveyed in severalty and its proceeds appropriated by one of the copartners. *Eaton* v. *Tallmadge,* 24 Wis. 217; *Buzzell* v. *Gallagher,* 28 Wis. 678; *Mellican* v. *Mellican,* 24 Tex. 426–440; *Markoe* v. *Wakeman,* 107 Ill. 259–60; *Jackson* v. *Richtmyer,* 13 Johns. 375–6; *White* v. *Clapp,* 8 Met. 370–1; *Piatt* v. *Hubbell,* 5 Ohio, 243.

*Fourth.* To disturb the rule of division laid down in this estate in 7 Utah, 249 (*Ayres* v. *Jack*), would be manifestly unjust, as the property would not be equally distributed, and

while that decision is not *res judicata,* yet it is well settled that such decision will not be again passed upon unless manifestly erroneous. *Kolb* v. *Swan,* 13 Atl. Rep. 379 (68 Md. 516); 2 Black. Judg. § 603.

*Fifth.* There is nothing in the point that the alleged decree of distribution in the probate court is decisive of the rights of the parties to the property herein, as such decree only declares the rights of heirs under the law of descents and does not adjudicate any new title. *Chever* v. *Poy,* 82 Cal. 68. The probate court had no jurisdiction to distribute any of this property, as the title never vested in the decedent Thomas Cope, but the patents and deeds went to his administrator direct.

*Sixth.* The action of C. O. Whittemore and of appellant George H. Cope is barred by the statute of limitations. 2 C. L. 221, § 3122.

*Seventh.* The claim that Janet's lot was a homestead is untenable for the following reasons: Thomas Cope lived upon the lot in question before the townsite of Salt Lake was entered and while the title to the land was in the general government; had a mere naked possession which passed to others, and as under the townsite laws only those in possession or entitled to possession could obtain a mayor's deed, consequently, Thomas Cope had no title upon which a homestead could be predicated. Waples on Home, and Exemp. pp. 102–9. *Myrick* v. *Bill,* 17 N. W. R. 268; *Buxton* v. *Traver, supra, Missionary Society* v. *Dalles,* 107 U. S. 336–345.

KING, J.:

Plaintiff avers in his complaint that one Thomas H. Cope died intestate in 1864, and at the time of his death was the owner of lot 5, block 3, plat "B," Salt Lake City, and lot 16, block 18, Big Field survey; that said lots were distributed by a decree of the district court to the defendants Thomas H. Cope and George H. Cope, as

his sole surviving heirs; that, prior to the distribution, Thomas H. Cope, claiming to be sole heir, sold lot 16 to one Thomas Jack, through whom defendants Mary Ann Jack and B. S. Young claim title; that defendant Thomas H. Cope is the owner of an undivided one-half part of said lot 5, and defendants Jack and Young are owners of an undivided half of lot 16. Plaintiff further alleges that he and George H. Cope are each the owners of an undivided one-fourth of said lots, and that, if Jack and Young are entitled to all of lot 16, they are entitled to their full share of the estate out of lot 5. Partition is prayed for according to the rights of the parties. George H. Cope answered, admitting the allegations of the complaint to be true, and asked for partition. The other defendants answered, and denied specifically complainant's averments, except as to the death of Thomas Cope, and pleaded the statute of limitations, and at the same time filed a cross complaint. They there allege that Thomas H. Cope is the owner in fee and in the possession of said lot 5, and Mary Ann Jack is in the possession and the owner in fee of the north three acres of said lot 16, and B. S. Young is the owner in fee and in the possession of the south two acres of said lot; that in 1864 said Thomas Cope had a possessory right only to said lots, and to lot 2, block 14, and lot 4, block 3, in Salt Lake City; that in said year he died, having no title to said land, and said Thomas H. Cope, George H. Cope, Janet Cope, and Margaret Cope claimed to be his only heirs; and that in 1867 an oral partition was made, which was fair and equitable in all respects; and it was so agreed (and partitioned accordingly) that Janet should own lot 5, Margaret lot 4, Thomas H. lot 16, and George H. lot 2; that, in pursuance of said agreement and partition, each person took possession of the lot set apart to him or her, and held sole possession of the same under the partition, and

ever after each of said persons claimed only the parcel of
land so partitioned to him or her, and claimed the ex-
clusive right, title, and possession thereto, free and clear
of any other person; that, since said partition, several
possession has been held thereunder, and it has been
acquiesced in and ratified by the parties thereto; that said
lot 5 was conveyed by the United States to the mayor of
Salt Lake City, in trust, and by said mayor was conveyed
to Thomas Jack, as administrator of the estate of Thomas
Cope, deceased, in trust for his heirs, and thereafter said
administrator duly conveyed said lot by deed to Janet
Cope and Thomas H. Cope, the latter being named as one
of the grantees, at the request of Janet; that in 1891
Janet Cope died testate, Thomas H. being devisee of said
lot 5, and her will was duly admitted to probate; that,
from the time of said partition to her death, she held sole
and exclusive possession of said lot 5, and since 1883 has
paid all of the taxes thereon, and greatly improved it,
and said Thomas H., from the proceeds resulting from the
sale of lot 16, and with her acquiescence and consent, con-
structed a house on her lot; that said devisee, since her death,
has held sole and exclusive possession thereof, and has paid all
taxes thereon; that one Conk, patentee of the greater part of
lot 16, in recognition of said partition, conveyed said part
to Thomas H., and by *mesne* conveyances the remainder
of said lot 16 was conveyed to him; that in 1884 lot 16
was sold by Thomas H. to Thomas Jack, and in 1885, by
decree of the district court, the latter's interest was vested
in defendant Mary Ann Jack, who conveyed in 1887 the
two south acres to William Leggett, and he sold the same
in 1890 to defendant B. S. Young; that valuable improve-
ments and houses have been erected on lot 16 by said per-
sons.

The complaint then alleges adverse possession of lots 5
and 16; that said Margaret Cope never questioned, nor

does she now, the validity of said partition; that by reason of the same, and the ownership acquired thereunder, she sold and conveyed said lot 4, appropriating the proceeds to her exclusive use; that her son, said George H. Cope, with full knowledge of said partition, the holding in severalty thereunder, the conveyance by his mother, and the improvements placed upon lots 5 and 16, and their great increase in value, in 1888 conveyed all of said lot 2 by warranty deed to one Showell, and appropriated the whole of the purchase price, and this was done by reason of the ownership acquired by him under said partition, which it is alleged was never questioned until the bringing of this suit; that said lots so conveyed by Margaret and George H. are beyond the reach of said persons claiming to be heirs of said deceased, and the grantees have good and valid titles thereto; that in 1890 said George H. attempted to convey an undivided one-fourth interest in said lots 5 and 16 to plaintiff, and that at the time of taking the conveyance he knew of all of the facts connected with the partition; that no consideration was paid by the plaintiff, but it is averred that he agreed to bring suit for the recovery of a portion of said lots, and to pay the costs of the action in consideration of said conveyance. Defendants prayed that the title to lot 5 be quieted and decreed to be in fee in Thomas H. Cope, and that the title to lot 16 be quieted and decreed to be in the other defendants. The cause was tried before a referee whose findings of fact were in harmony with the cross complaint. He not only found that a parol partition had been made, but also that the plea of the statute of limitations was well taken. A decree was duly entered by the trial court, based upon the referee's report, and from the judgment of the court plaintiff and defendant George H. appeal. After the appeal had been perfected, the
23

appellants stipulated in writing that the appeal, so far as it affected lot 16, should be dismissed, and the judgment of the district court relating thereto affirmed. Appellants have assigned numerous errors, but concede, in their brief, that the only questions for determination are embraced within the following interrogatories: (1) Did Janet Cope hold lot 5 adversely? (2) Is a parol partition of lands valid, and was the deposition. of the witness Moon (offered to prove the partition) admissible? (3) Did the parties acquiesce in and ratify the parol partition (if made)?

We will first consider the points involved in the second question. Appellants contend that a parol partition of lands is within the statute of frauds, and therefore invalid. Section 2831, Comp. Laws Utah, provides " that no estate or interest in lands, * * * nor any trust or power relating thereto, shall hereafter be created, granted, assigned; surrendered or declared unless by act or operation of law or by deed of conveyance in writing subscribed by the party," etc. In support of the appellants' contention, 1 Washb. Real Prop., and Browne, St. Frauds, are cited. In the first-named work it is stated that no parol partition can be effectual unless accompanied by deeds from one cotenant to the other, inasmuch as the statute of frauds applies to such cases. If this means that no rights can be acquired by coparceners either in equity or law under a parol partition, when they have followed the partition by actual possession in severalty, we cannot assent to the doctrine. Undoubtedly, this view has been entertained by the English courts, and many of the American courts, as well as text writers of respectability; but we think the better rule to be the one which is most equitable, viz: " That a parol partition, carried out and followed by actual possession in severalty of the several parcels, is valid, and will be enforced, notwithstanding the statute

of frauds, on the theory that it has been removed from its operation by part performance." 17 Am. & Eng. Enc. Law, p. 668, and cases cited; Freem. Coten. § 402; *Tomlin* v. *Hilyard,* 43 Ill. 300; *Ebert* v. *Wood,* 1 Bin. 216; *Welchel* v. *Thompson,* 39 Ga. 559; *McMahan* v. *McMahan,* 13 Pa. St. 376; *Ayers* v. *Jack,* 7 Utah, 249, 26 Pac. 300. "While the legal title might not, perhaps, be considered as passing by a parol partition, unless after a possession sufficiently long to justify the presumption of a deed, yet the parol partition, followed by several possession, would leave each cotenant seized of the legal title to one-half of his allotment, and the equitable title to the other half, and, by a bill in chancery, could compel from his cotenant a conveyance of the legal title according to the terms of the partition." *Tomlin* v. *Hilyard,* 43 Ill. 302.

In the case of *Ayers* v. *Jack, supra,* the oral partition of lands herein described was sustained. After Thomas H. had disposed of his lot (16) to Jack, Ayers and others thought they discovered a defect in the purchaser's title, and obtained a deed from Thomas H. and his wife and Janet for the same parcel of land. They were told: "They took all the chances of the purchaser;" and it appears the grantors made no claim to the land. Suit was brought, and the defendants set up an equitable title, relying upon the oral partition. The court held that the "equitable title ought to be protected and enforced, and that the plaintiffs, having bought with knowledge of the defendant's rights, can take nothing by their deed." Notwithstanding the statute of frauds, it is not regarded as an insuperable objection to the maintenance of an equitable defense by a purchaser of land under a parol sale. Possession taken under the contract of sale takes the case out of the statute. There seems to be no good reason why this doctrine should not apply to parol partitions.

Where possession, actual and exclusive in its character, is
taken under the partition, and is followed by all the
indicia of ownership, we think such a title is initiated as
will receive equitable cognizance. To enforce this rule
prevents the possible perpetration of a fraud and wrong
by one cotenant upon the others, when the latter acting
in good faith upon the partition, have added improve-
ments to their several parcels, the law being that "actual
occupancy is enough to put parties dealing with the prem-
ises upon inquiry, * * * and that a person at his
peril deals with 'or purchases real estate of one in the
possession of another." *Toland* v. *Corey*, 6 Utah, 395, 24
Pac. 190. No hardship is imposed upon third persons.

We think there is an analogy between cases where it is
sought to enforce a parol partition and those which
receive equitable cognizance growing out of a parol sale of
lands. The burden will rest upon the party affirming the
existence of the oral contract of sale, and also who claims
under the parol partition; and equitable relief should only
be granted in the latter case when the partition is equi-
table, and when the parties act understandingly. But it
is argued by the appellants' counsel that at the time of
the alleged partition, in 1867, the two sons of the deceased
were minors, and not only did not participate in the par-
tition proceedings, but, owing to their tender years, were
unable to comprehend their rights or the nature of a par-
tition, even if explained to them. This feature of the
case was presented to the court in *Ayers* v. *Jack*, *supra*,
as shown by the record; and, while there is no reference
to it in the opinion, it is clear the court did not deem it
objectionable to the partition, under the facts of the case.
We have no hesitancy in saying that upon attaining their
majority, and after a full understanding of their rights
and the partition previously made, if there was no ratifi-
cation and confirmation of the partition by them, it

would be invalid. But words were not indispensable to a ratification of the partition; affirmance might result from acts and conduct. If George H. and Thomas H., upon reaching their majority, knowing the circumstances of the partition, retained their possession of the land therefore set apart to them, claimed it as their own, asserted no claim whatever to the other lands occupied by the persons who had been their cotenants, enjoyed the fruits thereof, and exercised dominion over it, we think the oral partition is binding upon them. They cannot be heard in disaffirmance of the partition; they are conclusively presumed to have ratified the partition, and the rights of the various parties to the partition and their title to the land would relate back and attach as of the date of the partition. Freem. Coten. § 414; *Lynch* v. *Baxter*, 4 Tex. 431; *Wood* v. *Fleet*, 36 N. Y. 499. It would be inequitable to permit a repudiation of the partition where these facts exist, especially if the status of the property partitioned is changed, or rights have been acquired under a recognition of its validity. The evidence in the case at bar is that Margaret sold her lot, and enjoyed all the proceeds. George H. did the same. Thomas H. employed a portion of the proceeds arising from the sale of the lot 16 in improving Janet's lot. The lots conveyed are beyond the control of the parties to the partition, and it would be against equity and good conscience to now divide Janet's portion, which was devised to Thomas H. While there is some conflict in the testimony as to whether George H. fully understood the parol partition, and ratified it, a careful examination of the record convinces us that the record was sufficient to warrant the findings of the referee upon that point.

2. Was a partition made, and, if so, did the parties acquiesce in and ratify it? Thomas Cope died in 1864. His family consisted of his legal wife, Janet, Thomas H.,

a son of a deceased wife, Margaret, a polygamous wife, and
George H., her son. Janet resided on lot 5, with her
stepson, Thomas H., and Margaret and her son resided
on lot 4. About three years after the death of Thomas
Cope, the wives, owing to disagreements respecting the
property, selected three persons to partition it among them
and the two sons. While Margaret was not entitled to
receive anything, it was desired that the property should
be equally divided among the four. At that time Thomas
H. was about 14 years of age, and George H., 4 years.
Four lots had been left by the deceased (worth about $500
each), but his only title was that of naked possession. A
partition was made by the persons selected, which appears
to have been equitable and just. It was reduced to writ-
ing, but subsequently lost. Under the partition, Janet
was given lot 5, upon which she was residing, Margaret
lot 4, Thomas H. lot 16, and George H. lot 2. There-
after the lots were known by the names of the persons
receiving them. Janet resided upon her lot until her
death, in 1890, and devised it to Thomas H. She greatly
improved it, claimed it as her own, paid all the taxes as-
sessed against it; and after 1883, Thomas H. took posses-
sion of lot 16, claimed it as his own, and finally, in 1884,
sold it to Thomas Jack, who, in part payment therefor,
and at the request of Thomas H., constructed a house
upon lot 5 for Janet. After her death, Thomas H. took
possession of lot 5, and held exclusive and adverse posses-
sion up to the time of the bringing of this suit. Marga-
ret held exclusive possession of lot 4, paying the taxes
thereon, and claiming it as her own, until she sold it,
appropriating all the proceeds to her own use. Her son,
George H., knew of her claim and the sale. She received
the rents derived from lot 2 until George H. reached the age
of 17 or 18 years. He then took possession of the lot,
claimed it as his own, obtained the crops growing thereon,

paid the taxes assessed against it, and finally sold and conveyed it by general warranty deed, for the sum of $1,250. He retained the entire proceeds. No claim, so far as is shown by the record, was made by any other members of the family to the lot or any of the purchase price.

We think the evidence is sufficiently definite and certain to justify the finding that a parol partition was made, and that all parties acquiesced therein; and it was not error to admit the deposition of the witness Moon, who was one of the persons selected to partition the property, and whose testimony was confined solely to the question of partition. After ascertaining the facts regarding the partition, and several years after becoming of age, George H. conveyed his lot. His conveyance under the circumstances, and the appropriation of the proceeds, not only ratified the partition made during his minority, but, if anything was lacking upon his part to complete it, operated to complete the partition and render it binding. *Eaton* v. *Tallmadge*, 24 Wis. 217; *Buzzell* v. *Gallagher*, 28 Wis. 678; *Millican* v. *Millican*, 24 Tex. 426; *Markoe* v. *Wakeman*, 107 Ill. 251; *Jackson* v. *Richtmyer*, 13 Johns. 375; *White* v. *Clapp*, 8 Metc. (Mass.) 370; *Piatt* v. *Hubbell*, 5 Ohio, 243. As above stated, this court, in *Ayres* v. *Jack*, has sustained this parol partition, and the facts developed in the case at bar seem to have been fully presented upon the trial of that cause. While that case is not *res judicata*, it seems the doctrine of *stare decisis* ought to be invoked, especially when there is nothing manifestly erroneous in the decision. Upon principles of judicial propriety, as well as the importance of having the law fixed and certain, a court ought to respect its own decisions; and in analogous cases there would seem to be the greater reason for adhering to them where the facts are the same, though between different parties. *Kolb* v. *Swann*, 68 Md. 516, 13 Atl. 379; 2 Black,

Judgm. § 603.   Plaintiff does not claim to be an innocent purchaser for value, or to have been misled by defendants. In fact, the record shows he had full knowledge of the partition.   He is a practicing attorney and had purchased and sold lot 2, knowing that the title came through George H. and the parol partition.   He advised persons that, because of the oral partition and the statute of limitations, the title to lot 2 was good; that they would be safe in building valuable houses thereon; and that he was employed to defend the title if it were attacked.   It appears that his present interest was acquired for services in bringing this suit.   His relation to the case is not such as to commend him to a court of justice.

It is insisted by counsel for appellants that Janet's possession could not be adverse in its character, because the lot was the homestead of her deceased husband, and she held a life interest therein.   In 1868 the land laws of the United States were extended over Utah, and the mayor's entry was made in November, 1871.   Lot 5 was included in the land actually settled on and occupied as a town, and was reserved from a private sale, and no title to it could be acquired except under the townsite act of 1867 and the laws of Utah passed in pursuance thereof. Thomas Cope had no estate whatever in said lot, not even an inchoate right.   He could not devise it and give title, and it would not pass to his heirs.   No interest that he possessed could be the foundation upon which to predicate a homestead title, and out of his naked possession no estates in life or remainder could be carved.   *Buxton* v. *Traver*, 130 U. S. 232, 9 Supt. Ct. 509; *Missionary Soc. of M. E. Church* v. *Dalles City*, 107 U. S. 336–345, 2 Supt. Ct. 672.   We do not mean to hold that a homestead can only be based on a title.   In the case at bar, after Cope's death, the possessory title vested in another, and no homestead could exist upon the creation of a new title.   Wap.

Homest. pp. 102–109; *Myrick* v. *Bill* (Dak.), 17 N. W. 268. But, admitting that a homestead did exist, we think this would not preclude a parol partition, which would change the holding, and invest it with a different character.

It is argued that this was no change in the character of Janet's holding; that, having held as the wife of the deceased, the presumption is that she continued as a life tenant until there was an actual disseisin. After partition of the land, each owned in severalty an interest equal to that which before had been held in common, and a new possession is not essential. It need not be taken in pursuance of the partition; for as all the cotenants are in possession at and prior to the partition, there need not be any new taking of possession. It is sufficient that, after the agreement for partition, each retains possession of and exclusively occupies that tract set apart to him by such agreement. Freem. Coten. p. 516; *Hauk* v. *McComas*, 98 Ind. 460.

It is contended that the proceedings in the probate court negative the idea of a partition, and conclusively establish that both Janet and Thomas H. claimed only by descent. This issue was presented by the pleadings, and found adversely to plaintiff, and we think the evidence justifies the finding. Besides, the probate court only declares the rights of the heirs under the law of succession. *Chever* v. *Ching Hong Poy*, 82 Cal. 68, 22 Pac. 1081. And in this case Thomas Cope had no property subject to administration. The fact that the mayor's deed to lot 5 named the administrator as grantee does not alter the situation. The administrator held the title to lot 5 in trust, and the probate court had no jurisdiction to distribute. *Buxton* v. *Traver*, 130 U. S. 232, 9 Sup. Ct. 509; *Burns* v. *Hamilton*, 33 Ala. 210; *Cobb* v. *Stewart*, 83 Am. Dec. 467;

*Coulson* v. *Wing,* 42 Kan. 507, 22 Pac. 570; *Delay* v. *Chapman,* 3 Or. 459. The conveyance to the administrator was a dry trust, and executed in the heirs immediately. *Kay* v. *Scates,* 78 Am. Dec. 399. And, a partition having been effected, the administrator would hold the title in trust for the cotenants to whom it was partitioned. Considerable importance was attached by appellants to the conduct of Thomas H. in executing a conveyance to Ayres of lot 16, after selling it to Jack. This question was fully considered in the case of *Ayres* v. *Jack,* and demands no further attention.

It is contended by appellants that the proceedings in the probate and district courts, the petitions filed and reports made, are incompatible with the theory that there was a partition, and conclusively disprove it. While there is some foundation for their view, the record shows that evidence was introduced which tends to explain the seeming incongruities, and support the respondents' position that the parol partition was recognized by all, and became the basis of acquired rights; and, the referee having taken this view, we feel there is no occasion or warrant for disturbing his findings. We find no error in the record, and affirm the judgment, with costs.

BARTCH and SMITH, JJ., concur.