## WASHINGTON I. CROCKER v. JAMES TIFFANY.

A conveyance by one tenant in common of his interest in distinct parcels o
a common estate, is valid as between the parties to it, although it will not
bind his co-tenants to whose interests it is prejudicial.

ACTION of trespass and ejectment, brought to recover possession of a narrow strip of land in the westerly part of Providence,
on Pine street. A jury trial having been waived, the case was
submitted to the court both in fact and law. The following
facts appeared in evidence at the trial.

The plaintiff and defendant were owners of two adjoining
estates. Both estates, prior to their conveyance to the plaintiff
and defendant, were held in common by the heirs at law of the
late John Field, deceased. John Field purchased the estate
now owned by the defendant, from Duty Roberts, in 1803, and
it has since been known as the Homestead estate; the estate
now belonging to the plaintiff was purchased from Emmons
Partridge, in 1834, and this estate has since been called the
Partridge estate.

The title of the Partridge estate, now lodged in the plaintiff,
left the heirs at law of John Field, by five deeds executed at
different dates,—four conveying undivided sixths of said estate,
and one an undivided third.

The Homestead estate was also conveyed by undivided sixths
to different persons, until finally they all met in the defendant,
who now holds possession of said estate, together with the five·
feet strip of land in controversy, which he claimed is part of his
estate.

The plaintiff put in the deeds on which he grounds his title
to the Partridge estate, and claimed that these deeds, conveying
undivided sixths of the Partridge estate, embraced in their respective descriptions an undivided sixth in the strip of land in
controversy.

The defendant admitted that one of the deed's, submitted by the plaintiff, did embrace in its description an undivided sixth in said strip of land, but denied that any of the others did, and claimed that this deed, under any legal construction of the same, was void.

During the lifetime of John Field these two estates—the Partridge and Homestead—were separated by a fence, which gave to the Partridge estate a front of thirty five feet on Pine street, and to the Homestead estate a front of eighty-two and one half feet on Pine street. After his death, both these estates went to his widow, Amey Field, for life,—remainder to his heirs at law. At the time of John Field's death, the division fence stood where it stands to day, and shut the land in controversy into the Homestead estate.

After Mr. Field's death, which occurred September 8th, 1836, his six heirs at law, tenants in common of the remainder of his estate, began to convey their undivided shares.

The following is an abstract of the deeds under which the plaintiff claimed, arranged in the order of their execution :—

1846, Sept. 18th. Mrs. Seamans and her husband join in a conveyance of an undivided sixth part of the said Partridge estate to Mr. G. W. Crocker, describing said estate as a certain lot of land, &c. : " Beginning on the southerly part of Pine street at the north easterly corner of a lot of land formerly belonging to the late John Field, deceased, then on said Pine street north-easterly 35 feet ; thence south-easterly about 75 feet to a lot of land now or formerly belonging to the heirs of William Peckham ; thence south-westerly on said Peckham heirs land, thirty-three and nine twelfths feet; thence northerly by a fence and by said other land formerly owned by the said John Field, about seventy feet to the place of beginning, said estate being subject to the life estate of Amey Field, widow of the aforesaid John Field." [When this deed was executed, the division fence between the Partridge and Homestead estates stood where it stands to-day.]

1846, Oct. 31st. A bond signed by all the heirs at law of John Field, except Mrs. Seamans, who had already conveyed

her undivided sixth, conditioned that each should convey on demand to G. W. Crocker, his undivided sixth of the Partridge estate, was recorded in the Land Record Office of the city of Providence. The description of the Partridge estate contained in this bond does not include the five feet strip of land in suit.

1846, Nov. 1st. Amey Field leased the Partridge estate to G. W. Crocker, describing it in the very terms of the deed from Mrs. Seamans, and then adding, " and also five feet of land on Pine street, running back south-easterly forty-one feet four inches, to and of Richmond Bullock, being a strip of land from off the adjoining lot owned by the heirs of the said John Field, &c." A short time after this lease was executed, the division fence was moved by the lessee so as to include this " strip of land from off the adjoining lot " in the Partridge estate. ( ; .' ., ;1'\

1847, Feb. 7th. John Field, heir at law, conveyed his one undivided sixth part of the Partridge estate to G. W. Crocker, describing said estate as a lot of land situated, &c., bounded as follows : " Commencing on Pine street, at the corner of land owned by Elizabeth Coville, and running southerly ; bounding easterly land of said Elizabeth Coville, seventy feet to land of Richmond Bullock ; then westerly, bounding southerly said Bullock's land, thirty-three and nine-twelfths feet ; then northerly, bounding westerly on land of said Bullock to land of Amey Field, then turning and westerly, five feet to land of said Amey Field ; then northerly, bounding westerly land of said Amey Field, forty-one and four-twelfths feet to Pine street ; then on said Pine street forty feet to the place of beginning ; said lot being subject to the life estate of Amey Field, widow of John Field." (This deed the defendant, as matter of fact, admitted, embraces in its description one of the undivided sixths claimed by the plaintiff.)

1848, Nov. 27th. G. W. Crocker conveyed to Seth Scott two sixths of the Partridge estate, describing said Partridge estate in terms which embrace the five feet strip in controversy. [Crocker, however, the defendant contended, owned but one undivided sixth in this strip of land, if the deed from John Field was good, otherwise he had no title to it whatever, save

as lessee ; as the deed from Mrs. Seamans and husband embraced in its description only the Partridge estate proper, excluding said " strip of land from off the adjoining lot."]

1848, Nov. 28th.　Mr. Seth Scott conveyed to Mrs. Phebe Crocker, the two·sixths he had received the day before from her husband, by a deed corresponding in its description with the deed through which he had received the premises the day previous from Mr. Crocker.

1861, Jan. 29th.　Emily Davis and Joanna Taber conveyed to Phebe Crocker two undivided sixths of the Partridge estate, describing it, as the defendant contended, so as not to include ·the five feet " strip of land from off the adjoining lot."

1862, July 18th.　Richard B. Field conveyed to Phebe C. Crocker an undivided sixth part of a lot of· land situated on Pine street—the Partridge estate—describing it in the same words that form the description in the deed from Emily Davis and Joanna Taber to Phebe C. Crocker.　[The defendant contended that the descriptions in neither of these deeds could sustain the proposition that the five-feet " strip of land from off the adjoining lot," passed by their execution.]

1867, Sept. 7th.　Elbridge G. Fairbanks, mortgagee of Albert S. Field's undivided sixth part of the Partridge estate, sold at public auction under the mortgage, to Washington I. Crocker.

The defendant claimed title under the following deeds, each of which embraced in its description the five feet strip in controversy :—

December 7th, 1860.　George L. Tucker to James Tiffany.

December 16th, 1863.　Emily L. Davis, Joanna F. Taber, and Richard B. Field, to James Tiffany.

April 12th, 1866.　Albert Field and wife to James Tiffany.

February 12th, 1868.　J. Talbot Pitman, Commissioner, to James Tiffany.

*James Tillinghast, for the plaintiff:*—

I.　A deed by one tenant in common of a parcel of the common estate by metes and bounds is not absolutely void, but at the most only voidable by his co tenants so far as it is necessary to prevent its operating injuriously upon their rights in parti-

tion. For every other purpose and against all other parties it is operative as a valid conveyance. *Varnum* v. *Abbott*, 12 Mass. 475; *Whitton* v. *Whitton*, 38 N. H. 127; *Holcomb* v. *Coryell*, 3 Stock, (N. J.) 548; *Stark* v. *Barrett*, 15 Cal. 361, (see pp. 368–371); *Reed* v. *Spicer*, 27 Cal. 57; *Primer* v. *Walker*, 38 Misso. 94.

II. In this case all the tenants in common have concurred (by their several deeds) in conveying the estate in distinct parcels; and these have been confirmed by judicial proceedings to which the defendant was a party. See cases No. 7030, Oct. Term, 1867, in Ejectment and Equity; No. 822, October, 1867, and March, 1868, for partition, *Fairbank* v. *Tiffany*. And the only question now made is as to the title of this strip of five feet wide on Pine street lying between the other two estates. The tenants having thus concurred in parcelling out the common estate, it becomes a mere question of title under the deeds; and the defendant claiming under a portion of these, cannot justify his exclusive possession of the whole on the ground of the invalidity of these original conveyances. If he can, it avoids the title of both plaintiff and defendant to undivided portions at least of the entire adjoining estates held by them respectively, and leaves the title outstanding in third parties. See cases *supra*. The defendant, too, is estopped from making any such question by the recitals in his own deeds which admit the title of the Crocker estate, and bound upon it as such. See deeds to the defendant from George L. Tucker, from Albert F. Field and others, and from Emily L. Davis and others.

III. The plaintiff is entitled to three-sixths of this five feet. To one-sixth confessedly under the deed from John Field to George W. Crocker, of February 27, 1841. To one-sixth more under the deeds from Daniel T. Seamans and wife to George W. Crocker, of November 1, 1849. The one-sixth interest in this five feet conveyed by this deed passing by estoppel under the deeds containing full covenants of warranty of the whole five feet, from George W. Crocker to Seth Scott, dated November 27, 1848, and from Seth Scott to Mrs. Crocker, dated November 28, 1848. *Somers* v. *Skinner*, 3 Pick. 52; *White* v. *Patten*, 24

Pick. 324; *Wark* v. *Willard*, 13 N. H. 389 ; *Mickles* v. *Town-send*, 18 N. Y. 575.; *Brown* v. *McCormick*, 6 Watts, 60 ; *Baxter* v. *Bradbury*, 20 Maine, 260 ; 2 Wash. Real Prop. 473 to 480. To one sixth more, under the mortgagee's deed, Elbridge G. Fairbanks to the plaintiff, dated September 7, 1867. The dis-tance and the distinct reference to the assessor's plat here con-trolling the reference to the fence particularly coupled with the proof that the fence was then supposed to correspond with this plat and distance. *Lunt* v. *Holland*, 14 Mass. 149 ; *Davis* v. *Rainsford*, 17 Mass. 207 ; *Murdock* v. *Chapman*, 9 Gray, 156 ; *Thomas* v. *Hatch*, 3 Sumner, 170.

*Ripley and Ames, for the defendant:*—

I. These deeds we claim, save the deed from John Field to G. W. Crocker, executed February 27th, 1847, give the plain-tiff no colorable title to the five-feet strip in controversy. The deeds considered in connection with the facts, explain away all the undivided sixths claimed by the plaintiff, in said strip of land, except the one undivided sixth claimed under the John Field deed ; and this deed we submit is void.

II. By the will of Mr. John Field, his heirs at law became co-tenants in remainder of all the real estate he died seized and possessed of. See Will of John Field.

III. By an agreement now on record in the Town Clerk's office, at the city of Providence, a partition of the Partridge and Homestead estates was legally effected. This was an agree-ment on the part of each of the heirs at law of John Field, de-ceased, to convey his undivided share of the Partridge estate to G. W. Crocker, describing the said estate so as not to include the five-feet strip of land claimed by the plaintiff. See Bond.

IV. John Field, by his deed of February 27th, 1847, con-veyed to Mr. Crocker, not only his undivided sixth of the Par-tridge estate proper, as described in said agreement, but also, his undivided sixth part of a five-feet "strip of land from off the adjoining lot " temporarily fenced into the Partridge estate. This deed, we submit, in so far as it embraces in its description more than is contained in the description of the said agreement, violates the rule of common law " that one tenant in common

cannot convey his undivided share in a portion of the common estate, laying out that portion by metes and bounds." *Bartlett* v. *Harlow*, 12 Mass. 348 ; *Peabody* v. *Minot*, 24 Pick. 332 ; *Blossom* v. *Brightman*, 21 Pick. 283 ; *Brown* v. *Bailey*, 1 Met. 254 ; *Griswold* v. *Johnson*, 5 Conn. 263 ; *Starr* v. *Leavitt*, 2 Conn. 243 ; *Thompson* v. *Burbee*, 12 N. H. 563 ; *Jeffers* v. *Radcliff*, 10 N. H. 242 : *French et al.* v. *Ludd et al.* 1 N. H. 42.

V. Though James Tiffany, the. defendant in this case, is not one of the original co-tenants, still we hold that he has a right to avoid this illegal conveyance, standing on his rights as grantee of the original co-tenants. *Baldwin* v. *Whiting et al.* 13 Mass. 57.

VI. Points IV and V of this brief answer the claim advanced under the deed from Elbridge S. Fairbanks, as well as that set out under the John Field deed of February 27th, 1847. But we further maintain that as a discrepancy exists between the actual metes and the visible bounds in the description of the land conveyed by the former deed, the visible bounds must prevail over the metes in determining what really passed by the conveyance. *Howe et al.* v. *Bass*, 2 Mass. 360 ; *Penman* v. *Wead*, 6 Mass. 131 ; Bouvier's Dictionary, title " Monuments," cases there cited.

DURFEE, J. Two questions are made in this case, to wit: What interest has the plaintiff in the land in suit, by the terms of the deeds under which he claims ; and, if he has any, whether he can recover against the defendant's objection.

1. We think the plaintiff is entitled, by the terms of the deeds, to three undivided sixth parts of the land in dispute. This right, so far as regards the first point, to the sixth part formerly belonging to John Field, is not disputed, and his right to the sixth part formerly belonging to Mrs. Seamans, the doctrine of title by estoppel being applied in his favor, is obvious on an inspection of the deeds. We think he is also entitled to the one-sixth which formerly belonged to Albert S. Field, though, by reason of a contradiction in the descriptive part of the deed of Elbridge G. Fairbanks to him, his right to this sixth is less indisputable.

2. The second question grows out of an objection to the plain-

tiff's recovery, based on the rule that one tenant in common can-
not bind his co-tenants by a conveyance of his interest in dis-
tinct parcels of the common estate. This rule, however, is not
absolute. Such a conveyance is valid as between the parties to
it, and is voidable only in favor of co-tenants to whose interests
it is prejudicial. It would not, therefore, be applied in favor of
a tenant who had himself participated in such a partitionment.
For instance, if one of two tenants in common should convey
to the other his interest in a distinct part of the estate, the con-
veyance would be valid, and the remaining part of the estate
only would remain for partition. So if one of two tenants in
common should convey his interest in a distinct part of the es-
tate to a third person, and should afterwards convey his interest
in the remainder to his co-tenant, both conveyances would be
valid, for the co-tenant could not affirm his own title under the
second conveyance, without impliedly recognizing the right of
the grantor thus to convey the estate by distinct parcels. This
is the situation of the defendant. The plaintiff, or his predeces-
sors, purchased three sixths of the strip of land in dispute, and
the defendant, or his predecessors, purchased the corresponding
three sixths in the rest of the lot. The plaintiff and defendant
are both alike grantees of undivided interests in corresponding
parcels of the common estate, claiming them under the same
grantors, and neither of them, therefore, can assert his own,
without impliedly recognizing the validity of the other's title.

The fact that the defendant is also the grantee of the remain-
ing three sixths of the entire lot, puts him in the same position
as if, being originally the owner thereof, he had purchased of
the other owners as aforesaid; that is to say, it enables him
effectually to affirm his title in a part of the lot, in affirming
which, however, he necessarily affirms, by implication, the
plaintiff's title in the complemental part, derived from the same
grantors. See *Great Falls Co.* v. *Worster,* 15 N. H. 412.

We think, therefore, that the plaintiff, as owner of three
undivided sixths of the strip of land in question, is entitled to
possession thereof in common with the defendant, and give
*judgment accordingly.*