740 A.2d 599

**Diane M. JOHNSON**

**v.**

**Carol L. MacINTYRE.**

**No. 24, Sept. Term, 1999.**

Court of Appeals of Maryland.

Nov. 12, 1999.

472

Cynthia E. Young, Annapolis, for petitioner.

Laura V. Berthiaume (Margaret D. Farthing & Assoc., P.C., on brief), Rockville, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

We consider here the effect of a conveyance to a third party by one joint tenant, without the consent of the other joint tenant, of a parcel, described by metes and bounds, out of a larger, jointly-held tract. The issue arises in the grantee's action for an adjudication of rights and for partition.

The petitioner, Diane M. Johnson (Johnson), and the respondent, Carol L. MacIntyre (MacIntyre), are the daughters of Ada L. Lowe (Lowe). In May of 1976, Lowe solely owned in fee simple a tract that included all of Lot 41 in Section No. 1 of the Cabin John Park subdivision (Lot 41) in Montgomery

County.[1] Lot 41 was then and is now improved by two single-family residences, one known as 7653 MacArthur Boulevard, located on the western portion of Lot 41, and the other known as 7647 MacArthur Boulevard, located on the eastern portion of Lot 41.

On May 13, 1976, Lowe deeded all of Lot 41 to herself and to Johnson "in fee simple, as joint tenants" (the 1976 Deed). On March 10, 1983, Lowe executed and acknowledged, and on April 7, 1983, recorded two deeds. By its terms, the deed first recorded conveyed the western portion of Lot 41, described by metes and bounds, to Lowe and Johnson "in fee simple, as joint tenants" (the Johnson Deed). The second deed, recorded immediately after the Johnson Deed, by its terms conveyed the eastern portion of Lot 41, described by metes and bounds, to Lowe and MacIntyre "in fee simple, as joint tenants" (the MacIntyre Deed). The deeds made the two parcels "subject to a joint driveway." Johnson did not sign these deeds or authorize Lowe to act on her behalf in executing them.

Lowe executed her will in August 1994, devising "all of [her] interest" in both the western and the eastern parcels to Johnson. For approximately twenty years Johnson had lived in the residence on the western parcel while Lowe had lived in the residence on the eastern parcel. Lowe died August 31, 1996.

After Lowe's death, Johnson and MacIntyre each claimed title to the eastern parcel. MacIntyre sued Johnson and the Lowe estate in the Circuit Court for Montgomery County, and it appears that the residence on the eastern parcel has remained unoccupied during this litigation. MacIntyre seeks, *inter alia,* to quiet title to the eastern parcel in MacIntyre's favor "as surviving joint tenant pursuant to the [MacIntyre Deed]"; to possess that property; and, in the alternative, to partition "said property," in the event that the MacIntyre Deed did "not convey the entirety of 7647 MacArthur Boule-

---

1. The litigation in the circuit court also involved an adjacent lot, but that lot is not involved in this appeal.

vard to ... MacIntyre."[2] Both parties moved for summary judgment.

In her motion for summary judgment, MacIntyre made the following contentions. The 1976 Deed conveyed Lot 41 to Lowe and Johnson as joint tenants. The 1983 deeds, "construed as a single, integrated transaction," severed the prior joint tenancy as to all of Lot 41 and conveyed to MacIntyre "an undivided interest, held in joint tenancy [with Lowe], in a special tract in Lot 41." As a result, Johnson's interest became "that of a tenant in common with an undivided one half interest in the whole of Lot 41."

MacIntyre admitted that, "under the basic principle of cotenancy[,] ... if each tenant has an undivided right to possession of the whole, then one cotenant may not carve out a specific portion of the property for exclusive use." Nonetheless, MacIntyre argued that the 1983 deeds had severed the joint tenancy between Lowe and Johnson and conferred upon MacIntyre as grantee " 'rights, which will be considered by the court in making the partition of the whole tract, and which will be respected, so far, and so far only, as they can be without prejudice to the original co-tenant of the entire tract.' " *Oneal v. Stimson*, 70 W.Va. 452, 74 S.E. 413, 414 (1912) (quoting *Boggess v. Meredith*, 16 W.Va. 1, 29 (1879)). MacIntyre further submitted that the court could respect Johnson's rights, or give her "no less than what she was entitled to receive prior to the execution of the 1983 deeds," by partitioning Lot 41 and assigning the western portion to Johnson and the eastern portion to MacIntyre. MacIntyre stated:

"In view of the fact that [Johnson] has resided on the western portion of Lot 41 (7653 MacArthur Boulevard) for almost two decades, and that [Lowe] had resided on the eastern portion of Lot 41 (7647 MacArthur Boulevard) for that same period of time, and in view of the fact that the tax map reflected the same division ... the portion that [Lowe]

---

2. Johnson counterclaimed and cross-claimed seeking the opposite of the relief sought by MacIntyre.

would have been allotted in any partition action would have been the eastern portion. The fact that [Lowe] executed a deed attempting to convey exactly that portion to herself and [MacIntyre, as joint tenants] and attempting to confirm the other portion in [Johnson] proves that such a division was certainly within [Lowe's] contemplation. Thus, in any partition action as between [Lowe] and [Johnson] as to Lot 41, [Johnson] would have gotten the portion on which she had always resided—the western portion. Such a partition now, assigning [MacIntyre] that 'part ... of the share of [her] grantor'—i.e. the eastern portion—works no prejudice to [Johnson] as the co-tenant of the grantor in the entire tract. If [Johnson] is allotted the western portion of Lot 41, she will receive no less than that which she would have been entitled to in any event in any partition action between herself and [Lowe]." [3]

MacIntyre urged the court to partition Lot 41 in the manner just described.

Johnson argued that the 1976 Deed established a joint tenancy in Lot 41 between Lowe and Johnson. Johnson characterized Lowe's 1983 deeds, however, as an impermissible "attempt to transfer the whole property." In this light, Johnson argued that, "[u]nlike a conveyance by a party of his undivided interest in the joint property, the attempted conveyance of the whole property will not effect a severance of the joint tenancy." Consequently, Johnson submitted, Lowe's attempt to convey more of the joint property than she owned was void, so that Johnson took the whole of Lot 41 upon Lowe's death by survivorship.[4] Alternatively, if the 1983

---

**3.** The first step of this argument is premised on the right, recognized in Maryland, that one joint tenant may unilaterally sever the tenancy. *See Alexander v. Boyer,* 253 Md. 511, 519, 253 A.2d 359, 364 (1969) ("A joint tenant may convey his interest by deed, and the result is a severance of the joint tenancy and the creation of a tenancy in common between the grantee and the surviving joint tenant or tenants.") (internal quotation marks omitted) (quoting *Eder v. Rothamel,* 202 Md. 189, 192, 95 A.2d 860, 862 (1953)).

**4.** *See Downing v. Downing,* 326 Md. 468, 475, 606 A.2d 208, 211 (1992) (right of survivorship is incident of a joint tenancy).

conveyances were valid, Johnson submitted a fallback position which she has modified somewhat in this Court and which we shall consider, *infra*.[5]

The circuit court concluded that the 1976 Deed was a valid conveyance, and then said:

"The court finds, however, that under the [Johnson Deed Lowe] clearly attempted to unilaterally and impermissibly reduce [Johnson's] interest in Lot 41 from an undivided one-half interest as a joint tenant of the entire Lot 41 to a joint tenancy in the western portion of Lot 41 **only**. Furthermore, the [MacIntyre D]eed attempted to segregate the eastern portion of the parcel as the exclusive property of [Lowe and MacIntyre], again as joint tenants. It is axiomatic that one cannot convey that which is not theirs. Although [Lowe] retained the right, as a joint tenant in Lot 41, to convey her undivided one-half interest in the entire Lot 41 to [MacIntyre] (thereby converting the joint tenancy between [Johnson] and [Lowe] to a tenancy in common between [Johnson] and [MacIntyre] ), [Lowe] retained no right to unilaterally convey **any** specific portion of Lot 41 to any party. Both the [Johnson and MacIntyre D]eeds indicate that [Lowe] attempted to do just that. The court does not believe it appropriate to do so, and thus refuses to speculate as to the intent of [Lowe]. Consequently, the court will not 'rewrite' these deeds or attempt to divine why or to what end [Lowe] executed them."

Thus, the circuit court held that the 1983 deeds conveyed no interest in Lot 41, and that Johnson was the sole owner of the whole of Lot 41 as surviving joint tenant under the 1976 Deed.

MacIntyre appealed to the Court of Special Appeals where she presented the following questions:

"1. Did the Circuit Court err in refusing to ascertain the intent of [Lowe] in executing the March 10, 1983 deeds?

---

5. Johnson also argued that the attempt to convey the eastern portion of the lot to MacIntyre was invalid because it failed to comply with local subdivision ordinances. That argument has been abandoned in this Court.

"2. Did the Circuit Court err in holding that a transfer by one cotenant of a specific part of the land jointly owned—a conveyance by metes and bounds—is completely invalid and conveys no cognizable interest to the grantee?

"3. Did the Circuit Court fail to do equity by failing to apportion the eastern portion of Lot 41 to [MacIntyre]?"

MacIntyre argued that the circuit court failed to reach the question of Lowe's intent in executing the MacIntyre Deed only because it erroneously found that the conveyance attempted to do the legally impossible. She submitted that Lowe's "patent purpose was to have [MacIntyre] take 7647 MacArthur Boulevard and [Johnson] take 7653 MacArthur Boulevard in fee simple on her death." Further, MacIntyre stated that she

"agrees that [Lowe], as a co-tenant, could not create an interest in a **specific portion** of Lot 41, so that to the extent that the deeds purported to split Lot 41, they did not in fact do so. However, [MacIntyre] contends that the deed purporting to create a joint tenancy with [MacIntyre] in a specific portion of Lot 41 validly conveyed to [MacIntyre] an undivided interest in Lot 41. [MacIntyre] further submits that, construing the deeds together, equity should accord the effect the grantor intended, which was to convey 7647 MacArthur Boulevard to [MacIntyre]."

Finally MacIntyre claimed that the circuit court could partition Lot 41 without prejudice to the rights of Johnson, and that, by failing to do so, the court nullified the 1983 conveyances instead of giving effect to the grantor's intent as would be consistent with equity.

In an unreported opinion the Court of Special Appeals vacated and remanded. The court *dis*agreed with the circuit court's determination that "it was impermissible for a co-tenant unilaterally to convey his or her interest in property held in joint tenancy to another." Relying on *Bowers v. Baltimore Gas & Electric Co.,* 228 Md. 624, 180 A.2d 878 (1962), discussed *infra,* the Court of Special Appeals concluded that "one co-tenant may convey his or her portion of a specific

part of a larger tract of land to another [party, who becomes a] co-tenant so long as its value does not exceed in value the interest of the conveying co-tenant in the larger tract of land."

We granted Johnson's petition for certiorari. *Johnson v. MacIntyre*, 354 Md. 113, 729 A.2d 404 (1999). It presents the following questions for review:

"I. Under Maryland law, can a co-tenant who owns an undivided ½ interest in a parcel carve out and validly convey a specific portion, described by metes and bounds, from the parcel?

"II If so, what interest does that co-tenant convey?"

■ When reviewing a case decided on summary judgment, we must "identify the basis relied upon by a trial court in granting summary judgment because, in the event that [that] basis is erroneous, 'the appellate court will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled upon by the trial court, if the alternative ground is one as to which the trial court had a discretion to deny summary judgment.'" *Three Garden Village Ltd. Partnership v. United States Fidelity & Guar. Co.*, 318 Md. 98, 107–08, 567 A.2d 85, 89 (1989) (quoting *Geisz v. Greater Baltimore Med. Ctr.*, 313 Md. 301, 314 n. 5, 545 A.2d 658, 664 n. 5 (1988)). In the instant case, there appears to be but a single ground for the grant of summary judgment, namely, that a joint tenant has no right unilaterally to convey any specific portion of the jointly held land to a third party, and that any such attempted conveyance has no legal effect whatsoever. Johnson defends that position in this Court. If that position does not prevail, Johnson alternatively argues that, following the severance of the joint tenancy between Lowe and Johnson that resulted from the 1983 deeds, the MacIntyre Deed operated only on Lowe's undivided fifty percent interest in the east parcel, with the effect that Johnson continued to hold her undivided fifty percent interest in the east parcel as a tenant in common with a joint tenancy between Lowe and MacIntyre in Lowe's former fifty percent interest in the east parcel. Similarly, under Johnson's alternative submission, the

Johnson Deed operated only on Lowe's undivided fifty percent interest in the west parcel, with the effect that Johnson continued to hold her undivided fifty percent interest in the west parcel as a tenant in common with a joint tenancy between Lowe and Johnson in Lowe's former fifty percent interest in the west parcel. In this Court, MacIntyre supports the judgment of the Court of Special Appeals and further argues that she should be allotted the east parcel, in kind, so long as that allotment does not exceed the value of Lowe's undivided one-half interest in the whole of Lot 41.

## I

Johnson's argument that she takes all of Lot 41 by survivorship under the 1976 Deed is premised on the legal conclusion that the MacIntyre Deed is a complete nullity, insofar as the non-consenting cotenant, Johnson, is concerned. That is not the law. The rule for which Johnson contends is an extreme extension of a common law rule that had it origins in, and is limited to, partitions in kind. "The major problem that arises in conveyances by cotenants is where the grantor-tenant attempts to transfer his separate interest in a portion of the common property by metes and bounds. The general principle is that such a conveyance will not be given effect in so far as it interferes with [the grantor's] cotenant's right of partition." 2 *American Law of Property* § 6.10, at 46–47 (1952). In this opinion we shall call such a transfer a "Metes and Bounds" conveyance.

That the general principle concerns itself with partitions in kind is demonstrated by the description given by *American Law of Property* of the two ways in which the general principle has been expressed:

> "One line of cases asserts that a conveyance by a cotenant of his undivided interest by metes and bounds is void at law and will be given effect in equity only in so far as that physical portion of the land which he conveyed might be set off to the grantor-tenant without injury to his cotenants. The second line of cases states that such a conveyance by a

cotenant is valid unless defeated by his cotenants in an assertion of their rights of partition. If, however, the property so conveyed may be awarded to the cotenant's grantee without injury or prejudice to the other cotenants, the conveyance will not be defeated. It seems clear that the difference between the two lines of cases is merely verbal, and that substantially the same result is reached however the principle is stated."

*Id.* at 47 (footnotes omitted).

The rationale of some of the older cases, and the repudiation of that rationale, is set forth in 2 H.T. Tiffany, *The Law of Real Property* § 454 (3d ed. 1939) (Tiffany):

"In some states it is apparently the law that a conveyance of his interest in a specific part of the land by one cotenant thereof, if not ratified by his cotenants, is absolutely nugatory except as between the grantor and the grantee, and that it need not be recognized in any way by the cotenants. The view referred to, . . . that a conveyance by a cotenant of his undivided interest in a part only of the land held in cotenancy is invalid, as regards the other cotenants, is based on the assumption that, for instance, if A and B are cotenants, A might convey his interest in distinct parts of the tract to a number, perhaps a very large number, of persons, and that B, on seeking to obtain partition, would have to consent to a division of each particular part of the land between himself and the grantee of A's interest in that particular part, with the result that he would acquire, on partition, instead of a distinct portion of the whole tract, lying in one body, merely a portion of each of these distinct parts of the tract, which portions of distinct parts would probably not adjoin one another. Such an assumption appears to be uncalled for. It is sufficiently obvious that one cotenant's right to demand a partition should not be affected by any conveyance which the other may make, and likewise, that such a conveyance should not be allowed to affect the benefit which may accrue to him by reason of a partition. The cotenants must make the transferee of each undivided interest in each part of the land a party to any proceeding instituted by him to effect a

partition. But he is entitled to receive on partition one distinct portion of the whole tract just as if no such transfer had been made. In other words, any transferee of an undivided share in a particular part of the land must take subject to the possibility that all that part will, on partition, be allotted to another, so that he will acquire nothing as a result of the transfer. That this is so, has frequently been recognized, and accordingly, *in a majority of the states, a transfer by one cotenant of a specific part of the land jointly owned, a conveyance by metes and bounds, as it is ordinarily termed, is perfectly valid as regards his undivided interest in such part."*

*Id.* at 269–70 (footnotes omitted; emphasis added).

 A Metes and Bounds deed cannot deprive non-consenting cotenants of their partition rights, cannot bind the equity court, in a partition in kind, to the area allotment made by the grantor of the interest conveyed, and cannot effect a severance of the parcel from the whole tract. Nevertheless, when partitioning in kind, courts will attempt to give effect to the Metes and Bounds conveyance if it is possible to do so without injury to the non-consenting cotenant(s). Further, the cases recognize that a Metes and Bounds deed transfers to the grantee, at least equitably, the undivided interest of the grantor in the designated parcel.[6] One result of the interest

---

6. *See Kean v. Dench,* 413 F.2d 1, 3 (3d Cir.1969) (stating that "such a conveyance is voidable only[,] and as between the parties is valid and is to be given full effect if it can be done without prejudice or injury to the nonconveying cotenant"); *Saulsberry v. Saulsberry,* 121 F.2d 318, 322 (6th Cir.1941) (applying Kentucky law for the proposition that "a tenant in common may bind his own undivided interest in the common property by an easement in favor of third persons"); *Russell v. Stylecraft, Inc.,* 286 Ala. 633, 244 So.2d 579, 584 (1971) (noting that in a suit for partition "any party, . . . [including one whose interest] is restricted to some specific part, may insist that the omitted land or lands be included in the suit, and that all persons be made parties whose presence is necessary to a partition with such lands included"); *O'Neal v. Cooper,* 191 Ala. 182, 67 So. 689, 690 (1914) (holding that while tenants in common have a right to have land partitioned in a manner unaffected by a metes and bounds deed, nonetheless "a court of equity will protect the rights of such purchaser, if it can be done without prejudice to the other cotenants"); *Gates v. Salmon,* 46 Cal. 361, 377

(1873) ("The grantee of each of such deeds, is entitled to have his interest in the special locations set off to him, if it can be done without injury to the original tenants in common who did not unite in the conveyance, and their successors in interest."); *Walton v. Ward*, 142 Ga. 385, 82 S.E. 1067, 1069 (1914) (finding that a metes and bounds conveyance "inured to the benefit of [the single cotenant's] grantees, and will entitle those grantees to participate as tenants in common in a partition of the lands"); *Markoe v. Wakeman*, 107 Ill. 251, 263 (1883) (stating in dicta that "[w]e are not to be understood as holding that such a conveyance is entirely inoperative or void"); *Warthen v. Sieffert*, 139 Ind. 233, 38 N.E. 464, 466 (1894) (finding that a conveyance of sixteen acres, out of a forty acre tract, conveyed the cotenant's two-fifths interest within that sixteen acre parcel); *Finley v. Dubach*, 105 Kan. 664, 185 P. 886, 887 (1919) (finding that, when a cotenant who owned a one-half interest conveyed ten out of thirty-five acres, there would have been "no reason in such a [partition] proceeding for not protecting completely the rights of [the grantee] . . . and awarding him the full title to the 10–acre tract"); *Bowers v. Baltimore Gas & Elec. Co.*, 228 Md. 624, 629, 180 A.2d 878, 881 (1962) (affirming the sale of land subject to an easement granted by one cotenant "if a sale can be had without injury or prejudice to the rights of [the heirs of the nongranting cotenant]"); *Pellow v. Arctic Mining Co.*, 164 Mich. 87, 128 N.W. 918, 920 (1910) (noting that a metes and bounds conveyance "creates equities in [the cotenant's] grantee which will be protected and enforced so far as is possible without injury to the nongranting cotenant"); *Quinlan Inv. Co. v. Meehan Cos.*, 171 Mich.App. 635, 430 N.W.2d 805, 807 (1988) (per curiam) (noting that, when a cotenant leases a specific portion of the land, "in an action for partition, equity will step in to protect the lessee if such can be done without injury to the rights of the other cotenants"); *Kenoye v. Brown*, 82 Miss. 607, 35 So. 163, 165 (1903) (finding that a metes and bounds deed is not "absolutely void, but . . . voidable at the election of co-tenants whose rights are prejudiced thereby"); *Barnhart v. Campbell*, 50 Mo. 597, 599 (1872) (finding a metes and bounds conveyance valid because the old rule, whereby it was null, was based on the difficulties of partition in kind, whereas a state statute authorized partition by sale); *Warner v. Eaton*, 78 N.H. 515, 102 A. 535, 536 (1917) (stating that a cotenant's "deed of the whole of a distinct parcel of the common property is good to the extent of her interest"); *Holcomb v. Coryell*, 11 N.J.Eq. 548, 550 (1858) (stating that a metes and bounds conveyance by one cotenant is good against the grantor, provides a basis for estoppel, and that the "co-tenant cannot complain of it, unless when it operates to his prejudice[,] and then his rights will be protected"); *Landskroner v. McClure*, 107 N.M. 773, 765 P.2d 189, 192 (1988) (recognizing "that under certain circumstances a conveyance which purports to grant complete ownership of a specific tract within the common estate may operate to transfer only the vendor's undivided interest in that portion of the estate," and requiring the grantee to be joined as a party); *Dennison v. Foster*, 9 Ohio 126, 130 (1839) (in bank) ("One tenant in common can work a division of the common property, by conveying his share, in a deed defining its limits by metes and bounds."); *Seavey v. Green*, 137 Or. 127, 1 P.2d 601, 603 (1931) ("[A] court of equity will give full effect

acquired by the grantee, which is at least equitable, is that the grantee has standing to seek and to participate in a partition of the whole tract that is held in cotenancy.

One commentator, writing more than a century ago, summed up the then state of the law on Metes and Bounds conveyances as follows:

"We are not sure that the difference in the decisions of many of the courts upon this subject has not been more in form of expression than in matters of substance. If, however, there remain any States wherein the Courts really intend to assert that a conveyance by one cotenant of part of the common property is void, in any other sense than that such conveyance will not operate to diminish or impair the rights of the non-assenting cotenants, such courts are falling into the minority, as the more recent decisions tend strongly and surely toward the recognition of such conveyance as a valid transfer of all the grantor's interest in the property therein described, entitling the grantor to certain rights

---

to a deed conveying an undivided interest in a portion of a common tract, when it can be done without prejudice or injury to the nongranting cotenants."); *Crocker v. Tiffany*, 9 R.I. 505, 512 (1870) (stating that "if one of two tenants in common should convey his interest in a distinct part of the estate to a third person, and should afterwards convey his interest in the remainder to his co-tenant, both conveyances would be valid"); *Young v. Edwards*, 33 S.C. 404, 11 S.E. 1066, 1068 (1890) (upholding a conveyance of one-third of the area of a common estate on the ground that the granting cotenant intended to convey all of her one-third interest in the whole to the grantee); *Hitt v. Caney Fork Gulf Coal Co.*, 124 Tenn. 334, 139 S.W. 693, 697 (1911) ("[I]f the land can, in partition proceedings, be so laid off as to give the party in question his land at the place his deed covers, without injury to the others, this will be done."); *Barfield v. Holland*, 844 S.W.2d 759, 764 (Tex.App.1992, writ denied) (noting that the " 'deeds of a tenant in common to specific parcels of the land are not absolutely void' " because the doctrine of equitable partition " 'will protect such purchasers by setting aside to them the particular tracts purchased, if it can be done without injury to the other owners' " (quoting *Larrison v. Walker*, 149 S.W.2d 172, 177 (Tex.Civ.App.1941, writ ref'd))); *Worthington v. Staunton*, 16 W.Va. 208, 241 (1880) ("But in partition in such case a court of equity will allot the portion so conveyed by metes and bounds to the purchaser thereof; if it can be done without prejudice to the rights of the other co-tenants.").

that the cotenants of the grantor cannot wantonly disregard."

A.C. Freeman, *Cotenancy and Partition* § 204, at 279–80 (2d ed. 1886).

The principal modern case supporting Johnson's argument that the MacIntyre Deed is void is *Ianotti v. Ciccio*, 219 Conn. 36, 591 A.2d 797 (1991). There, a husband and wife owned residential property as joint tenants, and the husband alone executed a Metes and Bounds easement to adjoining property owners for use as a driveway. In an action to quiet title brought by the husband and wife, the trial court ruled that the instrument was effective to convey an easement in the husband's interest in the described area. *Id.* at 799. The Supreme Court of Connecticut reversed. Relying on a line of Connecticut decisions dating back to *Starr v. Leavitt*, 2 Conn. 243 (1817), the court reasoned that "if a cotenant cannot demand a particular parcel of the common estate on partition, he similarly cannot create such a right in a grantee of a particular parcel. To allow the cotenant to do so would be to allow him to prejudice the interests of his cotenants on a partition...." *Ianotti*, 591 A.2d at 800. The court concluded that the Connecticut rule had been modified to make the attempted transfer voidable, in the sense that it could be susceptible of ratification and could be the basis for an estoppel. *Id.* at 801. We do not agree with this analysis. Under the cases cited above the Metes and Bounds deed does not determine the outcome of a partition and, indeed, MacIntyre does not claim that it does. She urges simply that the proposed allotment to her in kind of the east parcel of Lot 41 would not prejudice Johnson's rights.

This Court expressly aligned itself with the modern view in *Bowers v. Baltimore Gas & Electric Co.*, 228 Md. 624, 180 A.2d 878 (1962). There, in essence, one cotenant granted a Metes and Bounds easement to a utility for the erection, operation, and maintenance of a power transmission line. Pursuant thereto a tower and transmission line were erected on the subject property. In the first of three appeals in the

controversy, *Burnham v. Baltimore Gas & Electric Co.*, 217 Md. 507, 521–22, 144 A.2d 80, 87 (1958), this Court held that the non-consenting cotenant was not bound by the easement. In the second appeal, *Baltimore Gas & Electric Co. v. Bowers*, 221 Md. 337, 346, 157 A.2d 610, 614 (1960), this Court held that the grantee of the easement had a derivative right to require the grantor of the easement to seek partition in kind. On remand, commissioners [7] reported that the property described in the easement was not fairly divisible in kind. Accordingly, the equity court ordered a sale in lieu of partition of the property, subject to the easement. Out of the distributable proceeds the non-consenting cotenant would be paid one-half of the value of the property, as if free and clear of the easement, and the balance of the actual proceeds would be paid to the granting cotenant. In the third appeal, *Bowers*, 228 Md. 624, 180 A.2d 878, the non-consenting cotenant argued that the easement was void.[8] Rejecting that argument, this Court said:

> "In reaching this conclusion, we have not overlooked the early cases cited by the [non-consenting cotenant] which in effect state that an attempted conveyance by a co-owner of a part of the common land is void, or is void as to the cotenants of the conveyor, or declare that a subsequent partition among original owners is to be made precisely as though the conveyance had not been made, but inasmuch as the courts in general now recognize that the grantee is equitably entitled to have partition if that be possible without prejudice to the nonconveying owners, we do not find the earlier cases persuasive, for it appears that the decisions in such cases were based on the principle that to allow a

---

7. In partition actions, if the court orders a partition, the court appoints, unless all parties expressly waive appointment, from three to five "disinterested persons to serve as commissioners for the purpose of valuing and dividing the property." Maryland Rule 12–401(c)(1).

8. It was apparently the object of the non-consenting cotenant to force the utility to acquire the easement through condemnation.

grantee to partition would in every case work a hardship on the original cotenants."

*Id.* at 629 n. 2, 180 A.2d at 881 n. 2.

In Maryland, statutory provisions for sales in lieu of partition have existed since Chapter 72 of the Acts of 1785. Currently the statute provides in relevant part:

"A circuit court may decree a partition of any property, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, parcener, or concurrent owner, whether claiming by descent or purchase. If it appears that the property cannot be divided without loss or injury to the parties interested, the court may decree its sale and divide the money resulting from the sale among the parties according to their respective rights."

Maryland Code (1974, 1996 Repl.Vol.), § 14–107(a) of the Real Property Article (RP).

■ Under this statute, it is possible that the grantee under a Metes and Bounds deed will not be allotted the parcel in a partition in kind. That is a risk that the grantee takes. But, a transferee of a grantor's entire undivided interest in the parcel will receive, in a sale in lieu of partition, a proportionate part of the net proceeds of the sale of the entire tract equal to the ratio that the grantor's undivided interest in the parcel described in the Metes and Bounds deed bears to the total of the undivided interests in the entire tract.

We agree with the statement by the court in *Barnhart v. Campbell*, 50 Mo. 597 (1872), where the court reversed an ejectment judgment in an action brought by the heir of the non-consenting cotenant against those who took under a Metes and Bounds deed. Discussing the then rule in some states that a Metes and Bounds deed "is void as to the co-tenant who does not consent," the court said:

"The only reason given is that it would render a partition of the land more difficult, and compel the co-tenant to take smaller pieces and more of them to make up his share. But this reason is not applicable to our laws concerning partitions. Here the partition is not necessarily made in kind, as

it is in other States and in England; but if partition in kind would prejudice the rights of the parties, the land is required to be sold, and proceeds divided among the parties according to their respective rights.... When the reason for the rule ceased, the rule itself also ceased...."

*Id.* at 599.

For the foregoing reasons we reject Johnson's contention that the MacIntyre Deed was a nullity and incapable of creating any rights in Lot 41 in MacIntyre. Consequently, Johnson does not exclusively hold a fee simple absolute in all of Lot 41 by virtue of being the surviving joint tenant under the 1976 Deed.

## II

In this Part II we address Johnson's alternative argument, with which we agree, as demonstrated by the analytical steps set forth below.

■ Step One. The Johnson Deed conveyed to Johnson one-half of Lowe's undivided interest in the west parcel. By that instrument Lowe did "grant, convey and transfer title unto" Johnson and herself in fee simple as joint tenants. RP § 2–101 provides:

"The word 'grant' ... in a deed ... passes to the grantee the whole interest and estate of the grantor in the land mentioned in the deed unless a limitation or reservation shows, by implication or otherwise, a different intent."

This deed severed the joint tenancy between Johnson and Lowe in Lot 41. It ended the unities of time and title in that tract. The Johnson Deed did not affect Johnson's fifty percent undivided interest in the west parcel, which she continued to hold under a title that rested on the 1976 Deed. Instead, the Johnson Deed transferred an additional twenty-five percent interest to Johnson in the west parcel, out of Lowe's fifty percent interest in that portion. As a result of the Johnson Deed, then, Lowe and Johnson held an undivided fifty percent interest in the west parcel as joint tenants, and that joint

tenancy was a tenant in common with Johnson's fifty percent undivided interest in the west parcel, which she held individually. *See Kolker v. Gorn*, 193 Md. 391, 67 A.2d 258 (1949) (husband's conveyance, when equitably reformed, created a cotenancy under which the husband and wife held by a tenancy by the entireties an undivided one-half interest in a tenancy in common with the husband's father, who held the other undivided fifty percent interest).

■ Step Two. The MacIntyre Deed similarly severed the joint tenancy in Lot 41 between Johnson and Lowe. It ended the unities of time, title, and possession. Following the Mac-Intyre Deed, Johnson continued to hold, pursuant to the 1976 Deed, an undivided fifty percent interest in the east parcel in common with a joint tenancy, created by the 1983 MacIntyre Deed, under which Lowe held a twenty-five percent interest and MacIntyre held a twenty-five percent interest. MacIntyre's entitlement to possession of the east parcel with Johnson and Lowe ended the unity of possession of the latter two cotenants.

■ Step Three. On the death of Lowe her twenty-five percent interest in the west parcel passed to Johnson by survivorship, and Lowe's twenty-five percent interest in the east parcel passed to MacIntyre by survivorship.

■ Although Lowe made different dispositions of her undivided interest in Lot 41 between the two parcels of Lot 41 described in her conveyances, those conveyances did not sever Lot 41. Instead, they conveyed Lowe's interests within those parcels in the manner just described. Thus, Johnson continued to hold her undivided fifty percent interest in the entirety of Lot 41 under the 1976 Deed. MacIntyre holds an undivided one-half interest in the east parcel, and, as such, she is currently a tenant in common to some degree of co-ownership with Johnson in Lot 41. Accordingly, MacIntyre has a right to have Lot 41 partitioned. *See Balderston v. Balderston*, 40 Md.App. 239, 241, 388 A.2d 183, 185 (noting the common law and statutory right of a tenant in common to compel partition), *cert. denied*, 283 Md. 729 (1978). The partition action applies

to the whole of Lot 41, and not simply to the east parcel, because the 1983 deeds could not sever Lot 41 or affect the fifty percent undivided interest in the whole of Lot 41 that Johnson took under the 1976 Deed.

 The undivided fifty percent interest in Lot 41 that is not held by Johnson under the 1976 Deed in Lot 41 has been allocated by Lowe on an area basis, but there is not any concession that the east and west parcels are equal in area, and the record does not include the precise area of each parcel. The extent of the undivided interest that each cotenant has in the whole of Lot 41 as a result of the joint tenancies in Lowe's interest created by the 1983 deeds is fixed by the ratio that the areas of the west and east parcels respectively bear to the total area of Lot 41. For example, if the east parcel is forty percent of the area of Lot 41, then MacIntyre's fifty percent undivided interest in the east parcel would be a twenty percent undivided interest in the whole of Lot 41. Similarly, if the two parcels are of equal area, Johnson would hold a seventy-five percent undivided property interest in the entirety of Lot 41, and MacIntyre would hold a twenty-five percent undivided property interest in the entirety of Lot 41.

On remand, the circuit court will have to determine the extent of the undivided property interest of each cotenant in the whole of Lot 41, determine the value of Lot 41, and determine whether the area of Lot 41 is fairly divisible in kind. If so, the court then will allot to each cotenant an area equal in value to the value of that cotenant's undivided property interest in Lot 41. If Lot 41 is not fairly divisible in kind, then the circuit court will conduct a sale in lieu of partition and distribute from the net proceeds to each cotenant a share fixed by that cotenant's undivided property interest in Lot 41.

### III

MacIntyre urges this Court expressly to recognize a power in the circuit court on remand to make a partition in kind under which the east parcel is allotted to her. This argument assumes not only that Lot 41 is fairly partitionable in kind, but

also that the east and west parcels are of equal value, and that MacIntyre's undivided property interest in Lot 41 is fifty percent.

In support of her request, MacIntyre relies principally on *Young v. Edwards*, 33 S.C. 404, 11 S.E. 1066 (1890). There a cotenant who held an undivided one-third interest in the tract conveyed a parcel to a third party by a Metes and Bounds deed. The non-consenting cotenants argued that the conveyance transferred only an undivided one-third interest in the described parcel. The court held, under the facts of that case, that the grantor intended to convey her entire one-third interest in the whole tract. This was because "the portion of the common property which was designated by metes and bounds does not exceed either in area or value the interest of the grantor, and ... [because] it was conveyed by a deed containing full covenants of warranty." *Id.* at 1067.

Under the facts of the case before us the east parcel cannot be allotted in kind to MacIntyre. Her theory seems to be that by the MacIntyre Deed Lowe intended to convey Lowe's entire one-half interest in all of Lot 41. Whatever Lowe's subjective intent might have been, the legal effect of her conveyances is as described in Part II above. When Lowe transferred her fifty percent interest in the west parcel to a joint tenancy in which Johnson held a twenty-five percent undivided interest, Johnson obtained an additional twenty-five percent undivided interest in the west parcel, and Lowe's interest was reduced to a twenty-five percent undivided interest. Thus, by the MacIntyre Deed, Lowe was not attempting to convey to a joint tenancy with MacIntyre all of Lowe's fifty percent interest in the whole of Lot 41.

The above-stated conclusion is also reached by analyzing the co-ownership interests in Lot 41 at the time the partition action was filed, after Lowe's death. At that time Johnson held a one hundred percent undivided interest in the west parcel of Lot 41, and she and MacIntyre each held fifty percent undivided interests in the east parcel of Lot 41. Whatever the value of the east parcel might be, the value of

the interests of MacIntyre and Johnson in the east parcel is the same. In order to increase MacIntyre's interest in the east parcel to one hundred percent, Lowe would have had to extinguish completely Johnson's interest in the east parcel. That is impermissible, because of prejudice to rights in the east parcel that Johnson acquired and continues to hold under the 1976 Deed.

## IV

For all of the foregoing reasons this partition action is remanded to the Circuit Court for Montgomery County for further proceedings consistent with this opinion.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS MODIFIED TO PROVIDE FOR FURTHER PROCEEDINGS CONSISTENT WITH THE OPINION OF THIS COURT, AND, AS MODIFIED, THE JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS IN THIS COURT TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.*